UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ZIETZKE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 19-cv-03761-HSG (SK)<br><br>**AMENDED REPORT AND RECOMMENDATION REGARDING MOTION FOR SUMMARY DENIAL OF PETITION TO QUASH AND FOR ENFORCEMENT OF IRS SUMMONS**<br><br>Regarding Docket No. 10 |

This matter was referred to the undersigned for a report and recommendation on the motion to enforce a summons and for a summary denial of the petition to quash filed by the Defendant, the United States of America ("Government"). For the reasons set forth below, the Court RECOMMENDS enforcing the summons with some limitations on its scope.

## BACKGROUND

Petitioner William Zietzke ("Petitioner") filed a petition to quash a summons issued by the Internal Revenue Service ("IRS") to Coinbase, Inc. ("Coinbase"), a "cryptocurrency" exchange, regarding his federal tax liability for the tax year 2016 (the "Summons"). (Dkt. No. 1.) On September 13, 2019, the Government moved to enforce the Summons and for a summary denial of the petition to quash. (Dkt. No. 10.) On December 19, 2019, the motion was referred to the undersigned to prepare a report and recommendation. (Dkt. No. 31.)

The IRS is investigating whether Petitioner correctly reported his cryptocurrency transactions in 2016. The District Court for the Western District of Washington addressed the validity of a summons relating to Petitioner's 2016 tax liability which was issued to a Bitstamp, another cryptocurrency exchange. *Zietzke v. United States*, 2019 WL 6310661 (W.D. Wash. Nov. 25, 2019). The court in *Zietzke* provided the following description of cryptocurrency, also referred

to as "virtual currency":

> Bitcoin is a decentralized cryptocurrency that uses a distributed ledger system, or "blockchain," to ensure the cryptocurrency's security and integrity. To use a blockchain system, a user first creates a wallet, which contains information used to move units of a cryptocurrency on a blockchain. When the user downloads or purchases a wallet, software in the wallet generates a private key (a large integer number). That private key is then used to mathematically generate a public key (also a large integer number), which is used to create an address (a mix of numbers and symbols). This address functions as the name suggests: it is the destination for a cryptocurrency payment.
>
> When two people agree for one person to send cryptocurrency to the other, the two reveal their public addresses to one another. Because the transferor's address is associated with their public and private keys, the transferee can confirm the transferor's ownership of the transferred cryptocurrency by verifying that the transferor's private key, public key, and address correspond. And once the cryptocurrency is transferred, the transferee can spend or withdraw the cryptocurrency with their own private key, which will now be associated with that cryptocurrency.
>
> Although cryptocurrency transactions can occur directly between individuals, those transactions are often handled through digital currency exchanges. Digital currency exchanges are businesses that hold large amounts of traditional and cryptocurrency, allowing them to facilitate third-party transactions of traditional currency for cryptocurrency. To help facilitate such transactions, these businesses also provide hosted wallet services.

2019 WL 6310661, at *1.

The IRS treats cryptocurrency transactions as monetary transactions with tax consequences. The IRS states in Notice 2014-21, 2014-16 I.R.B. 938: "virtual currency is treated as property. General tax principles applicable to property transactions apply to transactions using virtual currency." Cryptocurrency is, therefore, taxed according to the gain or loss that taxpayers realize when they sell or exchange cryptocurrency. *Id.* A taxpayer's gain or loss is determined by looking at the difference between the cryptocurrency's basis and the amount the taxpayer receives in exchange for the currency. *Id.* The basis, in turn, "is the fair market value of the currency in U.S. dollars as of the date of receipt." *Id.* And the cryptocurrency's fair market value is usually determined by the price at which the taxpayer purchases the cryptocurrency. *Id.*

Petitioner and his wife filed a joint 2016 federal income tax return, reporting a tax liability of $36,594, which they paid in full. (Dkt. No. 10-1 (Declaration of Amanda Snow), ¶ 10).

Petitioner and his wife then filed an amended 2016 federal income return, showing a reduced tax liability of $21,119 and claiming a refund of $15,475. (*Id.*, ¶ 11). In their original tax return, Petitioner and his wife reported long-term capital gains from seven transactions involving the sale or disposition of bitcoin. In their amended return, they removed the two largest of these transactions, reducing Petitioner's long-term capital gains from $104,482 to $410. (*Id.*, ¶¶ 12, 14.) This reduction in reported their long-term capital gain is the sole basis for their claimed refund. (*Id.*, ¶ 14).

Petitioner's amended return and requested refund spurred the IRS's investigation into Petitioner's 2016 tax liability and his bitcoin transactions. In connection with its investigation, the IRS issued the disputed Summons to Coinbase. The Court will address additional facts as necessary in the discussion below.

## ANALYSIS

Congress requires that the IRS investigate the tax liability of persons who may be liable to pay an internal revenue tax. 26 U.S.C. § 7601. Pursuant to 26 U.S.C. § 7602(a), the IRS has the power to issue administrative summons. "The § 7602 summons is critical to the investigative and enforcement functions of the IRS." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984). The IRS's power to issue summons has, therefore, been construed broadly in the IRS's favor. *See United States v. Euge*, 444 U.S. 707, 714-15 (1980).

The IRS may issue summons for the purposes of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or . . . collecting any such liability." 26 U.S.C. § 7602(a). A taxpayer identified in an IRS summons served on a third-party record keeper may initiate proceedings to quash the summons. 26 U.S.C. § 7609(b)(2)(A). Additionally, the IRS may seek to compel compliance with the summons. *Id.*; *Crystal v. United States*, 172 F.3d 1141, 1143 (9th Cir. 1999).

To enforce a summons, the IRS must establish a *prima facie* case for enforcement by showing that the summons (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already in the IRS's possession; and (4) satisfies all of the administrative steps set forth in the Internal Revenue Code. *United States v. Powell*, 379

3

U.S. 48, 57-58 (1964). "The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the *Powell* requirements have been met." *Crystal v. United States,* 172 F.3d 1141, 1144 (9th Cir. 1999) (internal quotation marks omitted). "The burden is minimal because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." *United States v. Dynavac, Inc.,* 6 F.3d 1407, 1414 (9th Cir. 1993).

Once the IRS establishes a *prima facie* case under *Powell*, the burden shifts to the petitioner to negate one of the four *Powell* elements or demonstrate a lack of good faith on the part of the Government. *Dynavac, Inc.*, 6 F.3d at 1414. "The taxpayer . . . carries a heavy burden." *United States v. Stuckey*, 646 F.2d 1369, 1372 (9th Cir. 1981). "The taxpayer must allege specific facts and evidence to support his allegations of bad faith or improper purpose." *Crystal*, 172 F.3d at 1144. "If no substantial challenge to the validity of the summons is made in a sworn affidavit or declaration alleging specific facts, the matter should be decided on the pleadings before the district court with no further proceedings." *Strough v. United States*, 326 F.Supp.2d 1118, 1121 (C.D. Cal. 2003) (citing *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1392-93 (9th Cir. 1985)).

The Court must scrutinize the Summons to determine whether it seeks information relevant to a legitimate investigative purpose, and the Court may choose either to refuse enforcement or narrow the scope of the summons. *United States v. Goldman*, 637 F.2d 664, 668 (9th Cir. 1980); *Wooden Horse Investments, Inc. v. United States*, 806 F. Supp. 1487, 1490 (E.D. Wash. 1992) ("The court may choose to enforce the summons, quash the summons, or enforce a more narrow summons with restrictions to narrow it 'no broader than necessary to achieve its purpose.'") (quoting *United States v. Bisceglia*, 420 U.S. 141, 151 (1975)).

**A.     Requirements under *Powell*.**

    **1.     Legitimate Purpose.**

Pursuant to 26 U.S.C. § 7602, the IRS may issue summons for the purposes of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or . . . collecting any such

4

liability." 26 U.S.C. § 7602(a). The IRS can issue a summons to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Powell*, 379 U.S. at 57 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)).

Here, the Government submits the Declaration of Amanda Snow, an IRS Revenue Agent, who is conducting an examination into Petitioner's federal income tax liability for 2016. (Dkt. No. 10, ¶¶ 1-2.) She states that IRS records indicate that Petitioner has used Coinbase, Inc., a digital currency exchange platform, to conduct bitcoin transactions. (*Id*., ¶ 4.) She further states that in order to determine Petitioner's correct federal income tax liability, the IRS must determine how many bitcoin transactions he conducted in 2016, what bitcoins Petitioner used to conduct those transactions, and when and how Petitioner acquired those bitcoins. (*Id*. ¶ 29.) The Government has demonstrated a legitimate purpose. Revenue Agent Snow is investigating Petitioner's 2016 federal tax liability and the summons was issued as part of that investigation and requests information that can reasonably be expected to assist in the investigation. (*Id*., ¶¶ 4, 10-35.)

It is not clear whether Petitioner challenges the IRS's legitimate purpose for issuing the summons. Petitioner concedes that conducting an examination into his income tax liability for 2016 is a legitimate purpose. (Dkt. No. 24 at 15.) However, Petitioner also appears to dispute part of the factual basis for issuing the Summons – whether the bitcoin transferred into his Purse.io account came from his Coinbase account. (*Id*. at 10-11.) Regardless, the Court finds that the Government has sufficiently demonstrated that the IRS has unanswered questions about Petitioner's 2016 bitcoin transactions and that the Summons was properly issued to assist with its investigation into this matter.

**2. Relevance.**

The second prong under *Powell* requires that the IRS' inquiry is relevant to the legitimate purpose. 379 U.S. at 57. "The IRS' power to examine records in connection with tax investigations is broadly construed." *IRS v. Zolin,* 809 F.2d 1411, 1414 (9th Cir.1987), *aff'd in part and vac'd in part on other grounds*, 109 S .Ct. 2618 (1989). If the records "might throw light" on the accuracy of the returns, then they are relevant. *Zolin,* 809 F.2d at 1414.

5

Petitioner asserts a number of relevance challenges. In making his arguments, he asserts that that the summons must be "no broader than necessary to achieve its purpose." (Dkt. No. 24 at 16 (quoting *United States v. Bisceglia*, 420 U.S. 141, 151 (1975)). Petitioner made the same argument in the Western District of Washington, in which he challenged another summons. That court explained that this language does not "impose any sort of narrow tailoring requirement." *Zietzke*, 2019 WL 6310661, at *4 (citing *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 23 (1985) ("We have never held . . . that the IRS must conduct its investigations in the least intrusive way possible. Instead, the standard is one of relevance.")). Rather, as the court noted, this "language stands for the simple proposition that a district court may narrow a summons when the summons seeks both relevant and irrelevant material." *Id*. (citing *United States v. Richards*, 631 F.2d 341, 345-46 (4th Cir. 1980) (concluding modification of summons was appropriate because the summons as written asked for information relating to a corporation's payments that may have been illegal but did not affect the corporation's tax liability)). In this context, the Court examines Petitioner's relevance challenges and finds that the requests for information about covered accounts, user names, third-party information, and counter-party information are relevant. The Court finds that the requests for information are overbroad with respect to time, and the Court recommends that the IRS proposed an amended summons to limit the timeframe of information sought to focus on the transactions at issue.

### i. Covered Accounts.

Petitioner argues that the definition in the summons of "covered accounts" is too broad because it includes accounts "indirectly" associated with him, including entities for which he is a member of a limited liability company, an officer or board member of a corporation, a partner of a partnership, or a trustee of a trust. Petitioner asserts the listed entities are legally separate and distinct from him and, thus, the Summons seeks records that are irrelevant to Petitioner's tax liability. (Dkt. No. 24 at 16.) The Summons defines "Taxpayer" to include Petitioner and:

> all domestic and/or foreign entities and/or structures over which [Petitioner] exercises and/or exercised control including, but not limited to corporations, partnerships, associations, limited liability companies, trusts, estates, foundations, escrows, charitable foundations, banks and nominees.

6

(Dkt. No. 1-2 (Summons).) The Summons also defines "Covered Accounts" to include:

> account or service for which [Petitioner] has, either directly or indirectly, any ownership interest or power to exercise control, including but not limited to, a right to withdraw, transfer, or transact using flat currency, virtual currency, or other property, or for which [Petitioner] is identified as a trustee, co-signer, guardian, custodian, administrator, or beneficiary . . . .

(*Id.*) The Government responds that the IRS is seeking information for all covered accounts because Petitioner may not have disclosed all of his Coinbase accounts to the IRS. (Dkt. No. 29 (Reply Br.) at 5.) The Government notes that Petitioner did not disclose an account he had with another digital currency exchange other than Coinbase until the IRS discovered that account. (*Id.*) Revenue Agent Snow explains that IRS defined "Covered Accounts" to obtain information on any account that [Petitioner] may have control over (and therefore ownership of), even if that control is in a business or fiduciary capacity." (Dkt. No. 29-1 (Second Declaration of Amanda Snow), ¶ 35.) The definition includes "corporate, partnership, and trust accounts because taxpayers have been known to create sham entities to hide their taxable income." (*Id.*) The Court finds that the Summons' definition of "Covered Accounts" is designed to obtain information regarding entities over which Petitioner exercises or exercised control, not entities to which he has merely a tangential relationship. Therefore, records from "Covered Accounts" as defined in the Summons "may be relevant" to the purpose of the summons. 26 U.S.C. § 7602(a)(1); *Powell*, 379 U.S. at 57-58.

### ii. Request No. 1: User Profile Information.

In its request number one, the IRS seeks:

> All application and registration records relating to the establishment of any Covered Accounts, including, but not limited to, all user profile information, user payment methods such as merchant card or bank account information, signature cards (electric or otherwise), email addresses, user names, mailing or physical addresses, and phone numbers.

(Dkt. No. 1-2 (Request No. 1).) Revenue Agent Snow explains that this request is "directed at establishing ownership and control over the account by [Petitioner]. Although the requests include a reference to 'user profile information' the IRS is not seeking passwords, security settings, or account recovery information." (Dkt No. 10-1 (Declaration of Amanda Snow), ¶ 32.)

In her reply declaration, Revenue Agent Snow further explains that the Summons requested user profile information in order to verify that those accounts, addresses, IDs, and public keys belong to the Petitioner. (Dkt. No. 29-1, ¶ 24.) Otherwise, Petitioner could disclaim them. (*Id.*) Additionally, in the IRS's experience, in response to other summons, Coinbase has not actually provided passwords, security settings or account recovery information when the IRS seeks user profile information. (*Id.*, ¶ 36.)

Petitioner argues that because "user profile information" is not limited to exclude passwords, security settings or account recovery information, Coinbase does not know that the IRS does not actually seek this information. (Dkt. No. 24 at 17.) The parties apparently agree that IRS should not seek and Coinbase should not disclose passwords, security settings or account recovery information. However, because the Summons does not make this limitation explicit, the IRS should clarify the definition of user profile information to exclude passwords, security settings and account recovery information.

Petitioner also argues that that there is no need and no justification provided for requesting "user names." (Dkt. No. 24 at 17.) Revenue Agent Snow explains:

> The IRS request for "user names" in Request No. 1 is directed at identifying the specific account holder and creating an evidentiary link between the account information and the individual taxpayer. The IRS has learned that many digital currency exchanges or similar platforms operating in the evolving virtual currency ecosystem do not necessarily require or maintain the actual full name or tax identification number of their users. Instead, these companies rely upon user names, log-in IDs, or email addresses to identify users. Similar to account applications or signature cards at traditional banks, user names, log-in IDs, or email addresses are necessary pieces of information to obtain from third parties when taxpayers, such [Petitioner], refuse to cooperate with the IRS because such information provides the IRS with the ability to link the relevant account information to the taxpayer.

(Dkt. No. 29-1, ¶ 38.) Based on this explanation, the Court finds that seeking user names "may be relevant" to the purpose of the summons. 26 U.S.C. § 7602(a)(1); *Powell*, 379 U.S. at 57-58.

### iii. Request No. 2: Information regarding Personal Identification.

In its request number two, the IRS seeks:

> All customer identification program records (such as Know Your Customer (KYC) or Customer Due Diligence (CDD) records) relating

8

> the Taxpayer and Covered Accounts, including, but not limited to, identifying information such as date-of-birth, physical address, social security number or other tax-identification number, passport, driver's licenses or other government-issued identification, Taxpayer photographs, income/employment information, customer explanation of activity information, third-party identification verification reports, and any other information used to verify or confirm identity.

Dkt. No. 1-2 (Request No. 2).)

Petitioner argues that the Government fails to explain why the IRS needs his social security number, date of birth, passport, driver's license, photographs, or any of the other identifying information requested, and that if the IRS wanted this information, the IRS could obtain it from him directly. (Dkt. No. 24 at 17-18.) The Government responds that, similar to the requested user profile information, the IRS is seeking this "identity-confirming personal information" from Coinbase in order to positively identify the owner of the account. (Dkt. No. 29-1 at ¶ 39.) Based on this explanation, the Court finds that seeking this "identity-confirming personal information" "may be relevant" to the purpose of the summons. 26 U.S.C. § 7602(a)(1); *Powell*, 379 U.S. at 57-58.

### iv. Requests Nos. 6, 8, and 9: Information about Counter-Parties.

Request No. 6 requests:

> [a]ll account history information . . . for transactions or events relating to any Covered Accounts, including, but not limited to the type of transaction . . ., party and counter party names, digital wallet information, blockchain addresses, transaction ids, and any other information related to the identity or location of the parties involved.

(Dkt. No. 1-2 (Request No. 6).) Request No. 8 requests:

> [a]ll contact information for individuals or entities . . . associated with any transactions involving any Covered Accounts, including, but not limited to, name, user name, address, telephone number, transaction id, and identification information.

(Dkt. No. 1-2 (Request No. 8).) Request No. 9 requests:

> [a]ll documents and information relating to any payment or transfer to or from any Covered Accounts, including, but not limited to, counterparty name, account, user name, physical mailing address, email address, website, checks, wires, electronic transfer information, ACH, PayPal, money orders, prepaid card information, or any other form of payment information.

(Dkt. No. 1-2 (Request No. 9).) Petitioner challenges the Government's attempt to seek such

personal information from counter-parties, individuals and entities who are not being investigated by the IRS and have not received advance notice. (Dkt. No. 24 at 18-20.) Petitioner argues that information about counter-parties is too far removed from his tax liability and cites two cases: *United States v. Monumental Life Ins., Co.*, 440 F.3d 729 (6th Cir. 2006) (the court found that an IRS request for information regarding third parties was not relevant under the *Powell* standard); *United States v. Coinbase*, 2017 WL 5890052 (N.D. Cal. Nov. 28, 2017) (request for information from Coinbase about 14,000 accountholder was too broad). The Court finds that those two cases address narrow circumstances that are not applicable here.

### a. *Monumental Life Insurance*.

In *Monumental Life Insurance*, the IRS was investigating the tax liability of Johnson Systems, Inc. for the tax years 1994 through 1997 as to whether Johnson had properly taken income tax deductions for contributions it made to its employee welfare benefit plan. Johnson's plan used employer contributions to purchase three Monumental life insurance products for its employees. *Monumental Life Ins.*, 440 F.3d at 731. The summons requested 172 categories of documents, including subparts, from Monumental for the years 1991 through 1999. While some of the requests related specifically to Johnson's insurance policies, others related generally to the products that Monumental offered to many of its customers. *Id*. The Court noted that judicial protection against sweeping or irrelevant orders was particularly appropriate when the summons was directed at a third-party, as opposed to the taxpayer. *Id*. at 736.

The court held that "in close cases, the 'mere assertion of relevance' by an IRS agent will not necessarily satisfy the government's burden" under *Powell*. *Monumental Life Ins., Co.*, 440 F.3d. at 736 (quoting *Goldman,* 637 F.2d at 667). The court found that the case before it exemplified an "exceptional circumstance" where the IRS's agent's declaration was inadequate to demonstrate relevance because:

> (1) the subpoena [was] directed to a third party, not to the taxpayer being investigated, (2) the IRS [sought] a voluminous amount of highly sensitive proprietary information about Monumental's general administration of its products, (3) the IRS [had] opposed the imposition of a protective order, and (4) the magistrate judge, who spent years considering the scope of the summons, found that the IRS was seeking "some irrelevant information."

10

*Id*. at 736-37.

The Court finds that the unique facts in *Monumental* which made it an "exceptional circumstance" are not parallel to the facts here. Revenue Agent Snow explained why the summons includes requests for information about counter-parties. The IRS needs to know who both parties to a transaction are in order to determine whether the transaction is taxable. (Dkt. No. 29-1, ¶ 26.) The IRS requested counter-party information from Coinbase in order to verify that the relevant transfers were in fact taxable events. (*Id*., ¶ 27.) During Petitioner's interview with Revenue Agent Snow, he refused to provide details regarding most of his transactions listed on his 2016 tax return. He told her that the IRS needed to accept his description about which transactions were taxable dispositions without providing even minimal information about who the bitcoins were sent to or for what purpose. (*Id*., ¶ 28.) Revenue Agent Snow explains that in her experience, such behavior generally indicates an attempt to conceal something. (*Id*.)

Additionally, in the cryptocurrency world, movements from one address to another address do not necessarily indicate a disposition by the taxpayer. (*Id*., ¶ 29.) People or entities move cryptocurrency between their own addresses frequently to make it difficult to trace ownership or to increase security against the hacking of the address (or public or private key). (*Id*.) Agent Revenue Snow provides an example of the multiple times the bitcoin deposited on January 11, 2016, were moved around and appeared to come from multiple addresses in a short period of time. (*Id*., ¶ 30.) Revenue Agent Snow also explains that the type of information the IRS is seeking about counter-parties in the Summons is similar to the type of detailed personal information the IRS routinely summons from a bank or financial institution about counter-parties to transactions. (*Id*., ¶ 32.)

### b. *United States v. Coinbase*

In *Coinbase*, the court found that a request for information from Coinbase about 14,000 accountholders was overbroad. In *Coinbase*, the IRS issued a John Doe summons to Coinbase, seeking information on over 14,000 accountholders, to examine whether there was a reporting gap between the number of cryptocurrency users Coinbase claimed and the bitcoin users reporting gains and losses. 2017 WL 5890052, at *2, 6. The court agreed that the Coinbase account

holder's identity and transaction records would permit the Government to investigate whether the holder had taxable gains that were not properly declared, but found that other requested information was broader than necessary. 2017 WL 5890052, at *6. Although the records such passports or drivers licenses, wallet addresses, public keys, records of Know Your Customer diligence would be needed to verify an account holder's identity, the court did not enforce the summons as to those categories at that stage because the Government was seeking records on over 10,000 account holders. 2017 WL 5890052, at *6-7. If the IRS determined that an account holder had a taxable gain and that there was some doubt as to the taxpayer's identity, then the additional documents would shed light on a legitimate investigation. 2017 WL 5890052, at *7. Because the Government was seeking "records for thousands of account holders through a John Doe summons," the court had an obligation to ensure that the Government was not collecting thousands and thousands of personal records unnecessarily. *Id*. The court noted that, if the Government later determined that it needed more detailed records on a taxpayer, it could "issue the summons directly to the taxpayer or to Coinbase with notice to a named user – a process preferable to a John Doe summons." *Id*.

The fact that the IRS is seeking information on the counter-parties to Petitioner's transactions does not render this Summons akin to a John Doe summons. As discussed above, the request for county-party information is relevant to the IRS's investigation into Petitioner's tax liability. Therefore, the court's limitation on the John Doe summons in *Coinbase* is not applicable here.

Although the IRS is seeking some information about counter-parties from Coinbase, the Government provides valid reasons for doing so related to its investigation of Petitioner's tax liability. Because the information about the counter-parties "might throw light" on the accuracy of the returns, the requests are relevant. *Zolin,* 809 F.2d at 1414.

### v. Time Frame.

Petitioner also challenges the Summons as overbroad because, although the IRS is investigating his tax liability in 2016, the Summons contains no date range limitation on the documents it is requesting. Petitioner raised the same challenge to the IRS summons issued to

12

Bitstamp in the Western District of Washington.

The court in the Western District of Washington determined that the summons to Bitstamp was overbroad based because it lacked a temporal limitation. *Zietzke*, 2019 WL 6310661, at *4. Although the IRS must determine Petitioner's basis for each transaction which occurred in 2016, which requires the IRS to determine when and how much Petitioner paid for the cryptocurrency used in the 2016 transactions, the summons asked for much more than that. *Id*. The court noted that the summons requested "[a]ll account history information (on-chain and off-chain) for transactions or events relating to any Covered Accounts." Thus, the summons requested information from Bitstamp relating to Petitioner's Bitcoin sales prior to 2016, which the Court found to be irrelevant to the IRS's stated purpose of auditing Petitioner's 2016 amended return. *Id.* As a remedy, the court order the Government to propose an amended summons modifying its requests to "demand information relating only to transactions that Petitioner made in 2016. Those requests may ask for information prior to 2016 only to the extent that the information is relevant to determining the tax implications of transactions in 2016." *Id*., 2019 WL 6310661, at *7 n. 3.

The Court concurs with the court's analysis in *Zietzke* and finds that, because there is no limitation based on time, the Summons also seeks information for Petitioner's bitcoin transactions which did not occur in 2016. Although the IRS may seek information before 2016 to determine how much Petition paid for the bitcoins used in his 2016 transactions, the Summons is not limited to this information. Therefore, similar to the court in *Zietzke*, the Court recommends that the IRS propose an amended summons to demand information limited to Petitioner's transaction in 2016 and determining the tax implications of those 2016 transactions.

### 3. Possession of Information.

The third *Powell* requirement is that the "information sought is not already within the Commissioner's possession." 379 U.S. at 57-58. Petitioner does not challenge the Summons on this ground.

### 4. Required Administrative Steps.

The only administrative step that Petitioner challenges is whether the IRS provided sufficient advance notice of its third-party contact. Section 7602(c) specifically prohibits third-

13

party contacts unless advance reasonable notice is given to the taxpayer. It specifically provides:

> An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

*J.B. v. United States*, 916 F.3d 1161, 1166-67 (9th Cir. 2019) (quoting 26 U.S.C. § 7602(c)(1)). This statutory provision "gives the taxpayer a meaningful opportunity to resolve issues and volunteer information before the IRS seeks information from third parties, which would be unnecessary if the relevant information is provided by the taxpayer himself." *Id*. at 1168. In *J.B.*, the court adopted a fact-specific approach, requiring courts to review the "totality of the circumstances" to determine if the IRS provided taxpayers with reasonable notice in advance of issuing third-party summonses. *Id*. at 1164. The Court here finds that the totality of circumstances shows that the IRS provided reasonable notice to Petitioner before issuing the summons for information about third-parties.

The court in *J.B. v. United States* made clear that Section 7602(c) requires "the IRS provide notice reasonably calculated to apprise taxpayers that the IRS may contact third parties." *Id*. at 1170. In the circumstances of that case, mailing out the generic notice, which the IRS refers to as "Publication 1", with the initial IRS letter instructing the plaintiffs to contact a revenue agent to discuss items on their 2011 tax return, provided insufficient advance notice. *Id*. at 1173-74. Publication 1 stated:

> Generally, the IRS will deal directly with you or your duly authorized representative. However, we sometimes talk with other persons if we need information that you have been unable to provide, or to verify information we have received. If we do contact other persons, such as a neighbor, bank, employer, or employees, we will generally need to tell them limited information, such as your name. ... Our need to contact other persons may continue as long as there is activity in your case. If we do contact other persons, you have a right to request a list of those contacted.

*Id*. at 1165.

The court noted that the IRS sent plaintiffs Publication 1 as part of its initial, introductory letter to the couple explaining that they had been selected for an audit. Significantly, the Publication did not accompany a specific request for documents and was sent more than two years

14

before the IRS subpoenaed the records at issue. The Publication was even sent before the IRS knew that the taxpayers had requested an exemption from the research audit and had not provided documents for the audit. *Id*. at 1173.

Additionally, the taxpayers were the subject of a research audit, designed to help the IRS improve its tax collection system, "where the subjects are selected at random, without any reason to believe that they are deficient on their taxes." *Id*. at 1173. A research audit is in contrast to "an audit in the normal course where the subjects are selected because of red flags in their tax returns." Therefore, the IRS was not required to move quickly and had no reason to believe that the taxpayers "might evade its review, hide assets, or abscond." *Id*. at 1173.

The court found that interests of the taxpayers in receiving advanced notice of any subpoenas was heightened. Because it was a research audit, "the IRS has every reason to proceed cautiously, ensuring that the taxpayer has adequate notice that the IRS may contact third parties and that the taxpayer's reputational interests are protected." *Id* at 1173-74. Moreover, the IRS was requesting information from a particularly sensitive source – the taxpayer's "employer, not a remote third party like a bank or financial institution." *Id*. at 1174. The court noted that "[a] taxpayer's reputational interests is heightened when the IRS requests information from an employer, which knows the taxpayer intimately and upon which the taxpayer relies for decisions about hiring and firing, and promotion." *Id*. Additionally, because the taxpayer's employer was the California Supreme Court and the taxpayer represented capital defendants for the state government, the subpoenaed documents were potentially covered by "the attorney-client privilege and other litigation-related privileges, and could have revealed [the taxpayer]'s litigation strategy representing persons on death row." *Id*. The court found that the lack of more specific advance notice was even more troubling because the summoned records were exactly the type of records the IRS should have expected the taxpayers to have and been able to readily provide once the dispute as to whether the taxpayers should have remained in the research audit was resolved. *Id*. Therefore, the court held that issuing the general Publication 1 two years before the third-party contact did not satisfy the reasonable advance notice requirement. *Id*. However, the court refrained from holding that a general notice, such as Publication 1, would be, in all circumstances,

insufficient. *Id*. at 1164.

The test of "totality of the circumstances" applied here shows that IRS complied with the administrative steps under the Internal Revenue Code. Here, the IRS is not relying on a general notice similar to Publication 1. The IRS sent Petitioner a letter dated April 22, 2019, which stated:

> We have reviewed the information provided by [Petitioner] with respect to his Bitcoin transactions during 2016. Based on the information and his explanation during our telephone conference, there are still some uncertainties with respect to his activities during the 2016 tax year. For example, [Petitioner] indicated that all of his Bitcoin holdings were essentially split between the coins held in his personal wallets managed through the Armory software and the coins that he acquired through Coinbase and disposed of through Coinbase or Purse.io.
>
> [Petitioner] explained that the none of the coins held through the Armory wallet were disposed of during 2016 and that all of the coins disposed of during 2016 came from acquisitions made through Coinbase. This is not true. Based on the transaction ids provided with the Purse.io information, we were able to locate those transactions on the Bitcoin blockchain and the address from which the coins were sent to Purse.io are not related to Coinbase. We were able to link some of those addresses with wallets associate with both Bitstamp and BTC-e, which are/were cryptocurrency exchange platforms similar, but unrelated, to Coinbase.
>
> We previously issued Information Document Requests for information pertaining to virtual currency holdings as follows:
>
> - The Information Document Request #1 requested "Virtual Currency activity statement for the period of 1/01/2016 through 12/31/2016, if available. If no virtual currency activity statement is available, please make available your spreadsheets, schedules, ledgers or other records used to track your virtual currency balance, transactions, etc."
>
> - The Information Document Request #2 requested "Print out the block chain transactions for all wallet addresses owned with the explanation of all the transactions for the period under exam."
>
> Furthermore, held phone conferences on the following dates as well to resolve this tax matter: 10/15/2018, 11/15/2018, 12/17/2018, 2/15/2019, 2/28/2019.
>
> We have been unable to obtain information requested from you.
>
> Based on the foregoing, we will be issuing you a summons seeking the previously requested information. This letter serves as a reminder that third party contacts may be issued with respect to the 2determination of your tax liability for 2016. We will be contacting various third-party entities as such as Coinbase, Purse.io, and Bitstamp to request information they might have.

16

(Dkt. No. 29-2 (Exhibit B to Second Declaration of Amanda Snow).) This was a specific letter, referencing the inability of the IRS to obtain all of the information requested directly from Petitioner, sent shortly before the Summons was sent to Coinbase, and only after the IRS engaged in efforts to obtain information from Petitioner directly. Additionally, as distinct from the taxpayer in *J.B.*, this is not a research audit and Coinbase is not Petitioner's employer. Therefore, Petitioner's reputational interests are not as heightened as the taxpayer in *J.B.*

Petitioner argues that the "exact" document requests were not described in the letter. But this is not what is required. The test is whether, under the totality of the circumstances, the notice was reasonably calculated to apprise Petitioner of the possibility that the IRS may contact third-parties and afforded Petitioner "a meaningful opportunity to resolve issues and volunteer information before third-party contacts are made." *J.B.*, 916 F.3d at 1164. The letter dated April 22, 2019, sent to Petitioner after trying to obtain information from his directly, under the circumstances here, satisfies the required test. The facts here show that the IRS complied with the Internal Revenue Code in giving advance notice of contact with a third-party.

**B.    Concerns about Privacy.**

Petitioner argues that the overbreadth of the Summons implicates his right to privacy protected by the Fourth Amendment. Petitioner urges the Court to construe *Carpenter v. United States*, 138 S. Ct. 2206 (2018), as limiting the "third-party" doctrine established in *Smith v. Maryland*, 442 U.S. 735 (1979) and *United States v. Miller*, 425 U.S. 435 (1976). This Court declines to extend *Carpenter* to this case.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." United States Const. Amend IV. The protections of the Fourth Amendment apply only where there is a subjective expectation of privacy that society accepts as objectively reasonable. *Katz v. United States*, 389 U.S. 347, 361 (1967). Pursuant to the third-party doctrine, a party lacks a reasonable expectation of privacy under the Fourth Amendment in information "revealed to a third party and conveyed [by that third party] to the Government authorities." *Miller*, 425 U.S. at 443; *Smith*, 442 U.S. at 743-44 (noting that the Supreme Court has "consistently . . . held that a person has no legitimate

17

expectation of privacy in information he voluntarily turns over to third parties"); *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 683 (11th Cir. 1984) ("An Internal Revenue summons directed to a third party bank or accountant does not violate the Fourth Amendment rights of a taxpayer under investigation since the records belong to the summoned party and not the taxpayer: the taxpayer has no privacy interest in the documents."). In *Miller*, the Supreme Court's analysis turned largely on the fact that Miller "voluntarily conveyed" the information contained in the bank records to the bank and that checks were "not confidential communications but negotiable instruments to be used in commercial transactions." 425 U.S. at 442.

In *Carpenter*, the defendant challenged on Fourth Amendment grounds the government's warrantless acquisition of his cell-site location information ("CSLI") from his wireless telecommunications carrier that had been sent to cell towers by his cell phone and stored by that carrier. 138 S.Ct. at 2211-12. The CSLI data acquired in Carpenter depicted the defendant's movements across nearly 13,000 specific location points during a 127-day span. *Id*. at 2212.

The Supreme Court rejected the application of the third-party doctrine to justify the warrantless acquisition of CSLI from the carrier. The Court held that Carpenter retained a reasonable expectation of privacy in the CSLI at issue even though he had shared it with his wireless carrier. *Id*. at 2217-20. The *Carpenter* Court focused on the significance of location data, noting that it had "already recognized that individuals have a reasonable expectation of privacy in the whole of their physical movements" and that cellphones embody "seismic shifts in digital technology" such that "when the Government tracks the location of a cell phone it achieves near perfect surveillance, as if it had attached an ankle monitor to the phone's user." *Id.* at 2218. Additionally, the *Carpenter* Court distinguished the CSLI from "voluntary exposure" rational underlying the third-party doctrine because information about cell phone location is "not truly 'shared' as one normally understands the term." *Id*. at 2220 (internal citation omitted) (noting that cell phones are "indispensable to participation in modern society," that there is no way to avoid creating information about cell site information). The Supreme Court concluded: "As a result, in no meaningful sense does the user voluntarily "assume[ ] the risk" of turning over a comprehensive dossier of his physical movements. *Id*. at 2220 (internal citation omitted). The

18

*Carpenter* Court noted that the opinion was a narrow holding. *Id.* at 2220 ("Our decision today is a narrow one. We do not express a view on matters not before us: real-time CSLI or 'tower dumps' (a download of information on all the devices that connected to a particular cell site during a particular interval).")

*Carpenter* is not applicable here because *Carpenter*'s holding is narrowly limited to facts different from this case, because location data is not at issue here, and because it is undisputed that Petitioner voluntarily exposed the requested data to Coinbase. Petitioner argues that the Government would be able to achieve "near perfect surveillance" of his finances with the information the Government seeks. With the information requested, the IRS could track and monitor his future cryptocurrency transactions. (Dkt. No. 24 at 22.) In response, the Government notes that 26 U.S.C. § 7605(b) generally limits the IRS to one examination of a taxpayer's books and records for a particular tax year unless the taxpayer requests an additional examination, or if the IRS, after investigation, provides written notice to the taxpayer that an additional examination is necessary. 26 U.S.C. § 7605. "[O]nce [Petitioner]'s exam is closed, Revenue Agent Snow cannot continue to access his records to follow his bitcoin activity." (Dkt. No. 29 (citing Taxpayer Browsing Protection Act, Pub. L. No. 105-35, § 2, 111 Stat. 1104 (1997); 26 U.S.C. § 7213A).) In light of the legal limitations on how the Government may use the information it obtains from Coinbase, the Court finds that the information the Summons requests is similar to the financial records in *Miller* and that the third-party doctrine governs this issue. Because Petitioner's voluntarily exposed this information to Coinbase for commercial purposes, he does not retain a reasonable expectation of privacy over this information.

**C.   Bad Faith.**

Petitioner argues that the IRS issued the Summons for an "improper purpose – to build its surveillance database." (Dkt. No. 24 at 24.) Petitioner claims that he has circumstantial evidence of such bad faith, but he merely speculates and imputes a negative inference onto conversations about how to proceed with the IRS's investigation into his tax liability. He argues that because there were ongoing discussions within the IRS on whether to issue a summons to him and/or to Coinbase, they had was a nefarious "plan" to build a surveillance database. (Dkt. No. 24 at 24-

19

26.) However, in the record before the Court there is no mention of issuing a summons to obtain evidence on taxpayers other than Petitioner, nor any evidence which would support drawing a plausible inference of such an improper purpose. Therefore, Petitioner fails to meet his "heavy burden" to allege "specific facts and evidence to support his allegations of bad faith or improper purpose." *Dynavac, Inc.*, 6 F.3d at 1414; *Crystal*, 172 F.3d at 1144. Accordingly, the Court will only consider the papers submitted and will not hold an evidentiary hearing.

Accordingly, except for the limitations as to relevance discussed above, the Court finds that the Government established a *prima facie* case under *Powell* and Petitioner failed to negate one of the four *Powell* elements or demonstrate a lack of good faith on the part of the Government.

## CONCLUSION

For the foregoing reasons, the Court RECOMMENDS GRANTING the Government's motion to enforce a summons and for a summary denial of the petition to quash, but with some limitations on the scope of the Summons. The Court RECOMMENDS that the District Court order the Government to file a proposed amended summons within fourteen days which clarifies its definition of user profile information to exclude passwords, security settings and account recovery information and which limits the time-frame of its requests to Petitioner's transaction in 2016 and to determining the tax implications of those 2016 transactions. The Court FURTHER RECOMMENDS that, if Petitioner seeks to contest the proposed amended summons, Petitioner shall file an opposition within seven days. However, Petitioner's objections, if any, shall be limited changes regarding the temporal limitations.

A party may serve and file specific written objections to this recommendation within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3.

**IT IS SO ORDERED**.

Dated: January 17, 2020

SALLIE KIM
United States Magistrate Judge